UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

JACQUELINE LIONEL,

                Plaintiff,              **MEMORANDUM & ORDER**
                                                                            12-CV-5390 (MKB)

           v.

TARGET CORPORATION a/k/a TARGET
STORES,

                Defendant.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On April 17, 2012, Plaintiff Jacqueline Lionel commenced this action against Target Corporation a/k/a Target Stores ("Target"), in the Supreme Court of New York, Kings County, alleging a claim of negligence. Defendant removed the proceeding to this Court on October 26, 2012, based on diversity jurisdiction, and now moves for summary judgment. For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

**I. Background**

    **a. July 14, 2010 incident**

On July 14, 2010, at approximately 9:15 p.m., Plaintiff entered a Target store at 2201 Nostrand Avenue in Brooklyn, New York. (Def. 56.1 ¶ 1; Pl. Opp'n 56.1 ¶ 1.) Customers enter this Target store by way of an escalator, which rises from a street-level entryway to the interior of the Target store, located on the first floor. (Deposition of Colden Jones, annexed to Declaration of Michael Crowley ("Crowley Decl.") as Ex. I, ("Jones Dep."), 29:7–24.) When customers get off the escalator on the first floor, they can observe the restrooms and the Target Guest Services offices directly in front of them. (*Id*. at 31:17–32:3.) A Starbucks retail shop and

a Target Café with a seating area for dining are located to the right of the escalators, while a corral for shopping carts and the Target merchandise area is located to the left, between two and twenty feet to the left of the top of the escalator. (*Id.* at 32:4–35:10.) After stepping off the escalator, Plaintiff turned left and walked through a hallway or vestibule toward the shopping cart corral. (Deposition of Jacqueline Lionel, annexed to Crowley Decl. as Ex. E ("Lionel Dep."), 18:25–19:25; Jones Dep. 34:25–35:4.) Plaintiff did not see anyone in the hallway or in the vicinity of the carts when she got off the escalator. (*Id.* at 21:21–22:25.)

As Plaintiff was walking toward the carts and the merchandise area of the store, she slipped on a lid from a food container. (Def. 56.1 ¶¶ 4,7; Pl. Opp'n 56.1 ¶ 7; Lionel Dep. 27:22–28:8, 30:19–31:7.) Plaintiff did not see the lid before she slipped on it, as she was looking directly ahead to the carts rather than at the floor. (Def. 56.1 ¶ 6; Pl. Opp'n 56.1 ¶ 6; Lionel Dep. 87:17–24.) Plaintiff fell to the floor, striking her right knee on the floor and injuring her right knee and ankle. (Lionel Dep. 33:4–34:11.) A Target manager and another employee assisted Plaintiff to her feet and had her sit in a nearby chair, where Plaintiff for the first time observed the lid that she slipped on. (*Id.* at 30:5–7; 35:8–25.) Plaintiff also observed wet paper towels approximately one to two feet away from the lid, which looked like they had been used to wipe up spilled food. (*Id.* at 26:10–29:3; Pl. Opp'n 56.1 ¶ 11.)

Plaintiff told the manager that she had slipped on a lid. (Lionel Dep. 39:18–21.) Both Plaintiff and the manager took photographs of the lid. (*Id.* at 39:12–14.) Plaintiff's photographs do not include the wet paper towels, because she no longer saw them on the floor by the time she

took the photographs.[1] (*Id*. at 31:8–20.)

According to Colden Jones, an Executive Manager at the Target store, anytime a guest is injured in the store, the leader on duty ("LOD") generates a Guest Incident Report by interviewing the injured guest, and completes a LOD Investigation Report. (Jones Dep. 46:10–50:13.) Sheldon Thomas, the Target manager, completed a written Guest Incident Report which Plaintiff signed without reading. (Lionel Dep. 40:19–41:9; Guest Incident Report dated July 14, 2010, annexed to Crowley Decl. as Ex. D ("Guest Incident Report"), 1.) The Guest Incident Report states that the cause of the accident was "unknown," that the floor was clean and dry, and that there was no object involved. (Guest Incident Report at 1.) An unsigned LOD Investigation Report, states that the floor was clean and dry at the time of the incident, that this was determined through "[a] visual look," and that the "source of the substance or condition" could not be determined.[2] (undated LOD Investigation Report, annexed to Crowley Decl. as Ex. H ("LOD Report"), 1.) The parties agree that Target employees regularly walk the area where Plaintiff slipped and fell. (Pl. Opp'n 56.1 ¶ 14; Def. Reply 56.1 ¶ 14.)

---

[1] The photographs taken by the Target manager and submitted by Defendant are of a low-quality and the Court can only identify the lower portion of some shopping carts. (*See* Crowley Decl. Ex. G.)

[2] The LOD Investigation Report also includes a section titled "Team Member Witnesses" seeking information from the author of the report about the team leader responsible for the area, the names of team members "either assigned to or performing duties in th[e] department or adjacent departments," and whether a team member(s) was the first to respond. (undated LOD Investigation Report, annexed to Crowley Decl. as Ex. H ("LOD Report") 1.) No information was included in this section and a hand-written "X" was placed over the section. (*Id*.) Jones testified that the LOD Investigation Report is prepared in the ordinary course of business, (Jones Dep. 47:17–20), and counsel for Defendant conceded as much, (*see* Jones Dep. 48:3–5). Based on his experience as a leader on duty, Jones had completed LOD Investigation Reports, and was familiar with Target's general procedure for completing this report, but had not completed the report regarding this incident. (Jones Dep. 46:10–25, 49:15–50:13.) According to Jones, the meaning of the "X" through this section was both that "there were no witnesses," and "[t]hey had no Team Members in that area." (*Id*. at 55:9–22; 67:2–10.)

### b. Plaintiff's medical treatment

Plaintiff was taken by ambulance to Interfaith Hospital. (Lionel Dep. 44:25, 49:18.) X-rays were taken of Plaintiff's knee and Plaintiff was given prescription painkillers. (Lionel Dep. 51:5, 52:14.) Plaintiff was referred to Kings County Hospital's orthopedic clinic where she received physical therapy. (*Id.* at 59:13–17, 60:11–19.) At some time in 2012, Plaintiff visited Bay Ridge Orthopedics and was informed that she needed surgery on her right ankle (due to nerve damage) and on her right knee. (*Id.* 73:2–3, 75:8–9, 76:2–3, 76:17–19.) Plaintiff does not receive Medicare, Medicaid or Social Security Disability. (*Id.* 77:5–10.)

## II. Discussion

### a. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Bronzini v. Classic Sec., L.L.C.*, 558 F. App'x 89 (2d Cir. 2014); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65 (2d Cir. 2013); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and

drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Plaintiff's negligence claim

Defendant argues that there is no evidence in the record indicating that Target had either actual or constructive notice that the lid was on the floor prior to Plaintiff's fall. (Def. Mem. 8.) Plaintiff asserts that there is sufficient circumstantial evidence from which a reasonable jury could conclude either that Defendant created the dangerous condition and therefore had actual notice of it, or that Defendant had constructive notice of the condition. (Pl. Opp'n Mem. 7–9.)

To establish a *prima facie* case of negligence under New York law,[3] "a plaintiff must demonstrate '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty, and (3) injury to the plaintiff as a result thereof.'" *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, --- F.3d ---, ---, 2014 WL 3360598, at *5 (2d Cir. July 10, 2014) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) and *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)). In order to show breach of a duty of care in a slip-and-fall case, the plaintiff must demonstrate a genuine issue of material fact that the defendant either created the dangerous condition or had actual or constructive notice of the condition. *Feis v. United States*, 484 F. App'x 625, 628 (2d Cir. 2012) (citing *Bykofsky v. Waldbaum's Supermarkets, Inc.*, 619 N.Y.S.2d 760, 761 (App. Div. 1994)); *see also Gordon v.*

---

[3] Because this is a diversity case, the Court applies New York substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 152 (2d Cir. 2013) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996))); *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) ("When a federal district court sits in diversity, it generally applies the law of the state in which its sits . . . .").

5

*Am. Museum of Natural History*, 67 N.Y. 2d 836, 837 (1986) (addressing "actual or constructive notice of the dangerous condition" theory of liability in a slip and fall).

### i. Creation of the condition and actual notice

Plaintiff argues that there is sufficient circumstantial evidence in the record to permit a reasonable jury to conclude that Defendant affirmatively created the dangerous condition and therefore had actual notice of it.[4] (Pl. Opp'n Mem. 7–9.) Plaintiff asserts that, based on the presence of the lid and the wet paper towel in an area where Target employees routinely clean and inspect the floor, and the fact that the incident report described the floor as clean and dry, "a jury may reasonably infer that a Target employee cleaned a food spill [using the wet paper towel] and, in doing so, negligently left remaining on the floor a paper towel and the lid to the food item." (*Id*. at 9.)

Plaintiff's burden at this stage of the proceedings is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that Defendant created the hazardous condition. *See Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (noting that "in cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 [of the Federal Rules of Civil Procedure] will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim," (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)), and holding that "the district court did not err in relying on [the plaintiff's] failure to adduce evidence regarding the elements of his [negligence] claim in

---

[4] "Where the defendant created the dangerous condition, actual notice is presumed." *Gayman v. Pathmark Stores, Inc.*, No. 04-CV-07882, 2005 WL 1540812, at *3 (S.D.N.Y. June 30, 2005) (quoting *Rose v. Da ECIB USA*, 686 N.Y.S.2d 19, 21 (App. Div. 1999)).

granting" summary judgment, as "there is no evidence that the [defendant] created the wet floor condition that caused [the plaintiff's] fall").

Plaintiff's argument is premised on the conclusion that the presence of the wet paper towels on the floor near the food container lid indicates that a food spill had occurred in the area, and that the paper towel was used to clean up the spill.[5] Plaintiff cites to the deposition testimony of Colden Jones, the Executive Manager at the Target store, that Target employees regularly walk the floor of their shift area, and that all employees are responsible for cleaning any spills they see on the floor. (Pl. Opp'n Mem. 9 (citing Jones Dep. 82–83).) Plaintiff contrasts this with the "common sense" observation that "one would be lucky to find one customer out of one hundred who would actually stop and clean up a food spill that is on the floor of a department store." (*Id.*) Plaintiff therefore concludes that because the presence of the paper towel is evidence that a food spill occurred and was not cleaned completely, and because Target employees have the duty to clean up all spills and pick up anything they see on the floor, while customers do not have such a duty and are rarely inclined to do so, a jury could infer that a Target employee, seeing a food spill, attempted to clean the spill with the paper towel, but negligently failed to remove both the wet paper towels and the lid from the floor. (*Id.*)

To the extent that Plaintiff's theory relies simultaneously on the diligence of a Target employee observing the spill and cleaning up the spill, as well as the negligence of the same employee in leaving the spill only partially cleaned, it is internally inconsistent, and relies on an

---

[5] Defendant argues that Plaintiff's theory — that the presence of the wet paper towel is conclusive evidence of a spill that was not completely cleaned — lacks any evidentiary support to distinguish it from equally plausible theories, such as, for example, that a customer dropped the paper towel on the floor. (Def. Reply 3.) However, reviewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that the wet paper towel indicates that someone had attempted to clean up a food spill associated with the lid.

7

unsupportable inference that only a Target employee, rather than a customer or another individual, could have cleaned the spill but not completed the clean-up. Plaintiff's theory, while plausible, is not supported by any evidence and thus speculative and insufficient to defeat summary judgment. *See Janetos v. Home Depot U.S.A., Inc.*, No. 09-CV-1025, 2012 WL 4049839, at *10 (E.D.N.Y. Sept. 13, 2012) (finding that plaintiff had not established that defendant had created the dangerous condition of doors stacked improperly in the store, because although plaintiff's "narrative provides a plausible explanation for what may have occurred, it is not conclusive for summary judgment purposes"); *Painchault v. Target Corp.*, No. 09-CV-1831, 2011 WL 4344150, at *3 (E.D.N.Y. Sept. 14, 2011) ("The record contains no evidence that Target created the condition that caused Painchault to fall. The small puddle of liquid, apparently water, could have been caused by a customer, and nothing indicates that it was caused by a Target employee."); *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 404 (E.D.N.Y. 2010) (granting summary judgment and rejecting plaintiff's argument "that the puddle of water could have resulted from one of [the defendant's] employees' affirmative, although inadvertent, acts, such as accidentally spilling water from a cleaning bucket," where "[t]he evidence . . . does not support a reasonable inference that a [defendant's] employee created the puddle, even if [it] does not foreclose such a possibility"); *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 331 (E.D.N.Y. 1998) ("At this juncture, all that is really known is that the plaintiff slipped on spilt coffee in the defendants' hotel. There is no proof, only mere speculation, as to how the substance got on the floor, or whether the defendants or their employees created the condition, and absent evidentiary proof in admissible form to prove otherwise, the plaintiff has not raised a triable issue of fact."); *cf. Gayman v. Pathmark Stores, Inc.*, No. 04-CV-07882, 2005 WL 1540812, at *3 (S.D.N.Y. June 30, 2005) (denying summary judgment where plaintiff

submitted an affidavit from a witness who observed "a cart pulled by a Pathmark employee [that] created a trial of slippery liquid" in the vicinity of the plaintiff's fall). The presence of a wet paper towel near the food lid, in the absence of any other tangible evidence to support Plaintiff's theory, is insufficient to permit a reasonable jury to find that Defendant's employees created the hazard or otherwise had actual notice of the hazard.

### ii. Constructive notice

Plaintiff also argues that the lid on which she slipped was on the floor for a sufficient length of time prior to the accident and that Defendant therefore had constructive notice of it. "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Antonelli v. Wal-Mart Stores, Inc.*, 216 F.3d 1071 (2d Cir. 2000) (quoting *Gordon*, 67 N.Y.2d at 837); *see also Bynoe v. Target Corp.*, 548 F. App'x 709, 710 (2d Cir. 2013) (same). "The mere existence of a foreign substance, without more, is insufficient to support a claim of negligence." *Castellanos v. Target Dep't Stores, Inc.*, No. 12-CV-2775, 2013 WL 4017166, at *4 (S.D.N.Y. Aug. 7, 2013) (*quoting Segretti v. Shorenstein Co., East, L.P.*, 682 N.Y.S.2d 176, 178 (App. Div. 1998)). Rather, there must be evidence in the record establishing "either how the substance got there or how long it was there before the fall." *Shimunov v. Home Depot U.S.A, Inc.*, No. 11-CV-5136, 2014 WL 1311561, at *5 (E.D.N.Y. Mar. 28, 2014) (quoting *Painchault*, 2011 WL 4344150, at *4).

### 1. Visible and apparent

Defendant argues that Plaintiff's testimony that she did not notice the lid on the floor prior to the incident "calls into question whether the lid was visible and apparent." (Def. Mem. 10.) The photographs submitted by the parties, although of poor quality, show an opaque object

9

on the floor that appears to be between 3 and 5 inches in diameter. (*See* Crowley Decl. Exs. F–G.) In addition, Plaintiff observed the lid subsequent to her fall. (Lionel Dep. 30:5–31:7.) This is sufficient to establish that the object was "visible and apparent." *See Castellanos*, 2013 WL 4017166, at *3 ("[The plaintiff's] sworn statements that she saw the plastic display sign on the ground after she slipped, are sufficient at the summary judgment phase to establish that a hazardous condition existed." (citing *Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335, 2009 WL 1955555, at *6 (E.D.N.Y. July 6, 2009)).

### 2. Sufficient length of time

Defendant argues that there is no evidence establishing how long the lid was on the floor prior to Plaintiff's fall, and that "it is possible that another guest dropped the lid on the floor a short time prior to Plaintiff's fall." (Def. Mem. 10.) Plaintiff argues that there is sufficient evidence to establish that Defendant's employees were in the immediate vicinity of the dangerous condition prior to the accident and could have easily noticed and removed the lid. (Pl. Opp'n Mem. 11.) Plaintiff cites to the fact that the accident "took place in an area that is regularly traversed by Target employees," and that the accident "occurred directly in front of Target's Guest Services office, and in the area of the food court." (*Id.*) Plaintiff relies on case law establishing that, where the public is invited onto the premises, the owner or operator of the premises incurs a "heightened duty" to guard against potential hazards. (Pl. Opp'n Mem. 13 (citing *Kelsey v. Port Auth. of New York & New Jersey*, 383 N.Y.S.2d 347 (App. Div. 1976).) In *Kelsey*, the court found that the defendant, a terminal operator, had a heightened duty to guard against potential hazards, and that it was aware of this duty based on "the promulgation of work rules governing building attendants." *Kelsey*, 383 N.Y.S.2d at 348. The court in *Kelsey* also noted that "[a] building attendant was present at the scene just prior to the accident" and found

10

that, "[u]nder such circumstances, the jury could reasonably conclude that the dangerous condition which caused plaintiff's injury was not properly observed or, although observed, not cleaned." *Id*.

In this case, there is no dispute that, as the operator of a public facility, Target had and was aware of a heightened duty to inspect for and eliminate potential hazards to the public on its premises. (*See* Jones Dep. 82:7–85:3.) However, Plaintiff's evidence is insufficient to establish the reasonable inference that Defendant breached this duty, since there is no evidence in the record indicating how long the food container lid remained on the floor prior to Plaintiff's fall, in order to establish that the hazard "was not properly observed or, although observed, not cleaned." *See Kelsey*, 383 N.Y.S.2d at 348. Unlike in *Kelsey*, where a building attendant was at the scene immediately prior to the accident, there is no evidence that any Target employees were in fact "at the scene just prior to the accident," only Plaintiff's arguments that they probably were, because of the proximity of the site of her fall to the Guest Services office.

Accepting as true Plaintiff's assertion that Target employees "regularly" traverse the floors throughout the store, this fact is insufficient to establish that the food lid had been on the floor long enough that it was seen or should have been seen by an employee in the course or his or her "regular" rounds. Plaintiff argues that circumstantial evidence establishes that there was a food spill that had been on the floor long enough that Target should have become aware of the hazard. According to Plaintiff, the time frame can be established based on the fact that Plaintiff did not see the spill take place, and that the incident report stated that the floor was "clean and dry," leading to the conclusion that a spill had taken place and had been negligently cleaned up sufficiently prior to the time that Plaintiff arrived to permit the floor to have dried. (Pl. Opp'n Mem. at 12 ("The time it would have taken to retrieve a paper towel, clean the floor and, the

11

process of the floor drying establishes a period of time of constructive notice.").) Defendant argues that, in light of the fact that the cart corral was close to the top of the escalator, any customer could have walked through the area, dropped the lid, and continued into the merchandise area and out of Plaintiff's sight when she stepped off the escalator, in a matter of seconds. (Def. Reply 8.)

The cases relied on by Plaintiff, *Kelsey* and *Restey*, were both decided based on evidence in the record establishing the time frame of how long the hazard had been present. In *Kelsey*, the court found that the defendant was on constructive notice of a hazard on a set of stairs, where the plaintiff testified that she had seen "cigarette butts, paper cups and wetness on two steps of the stairway" 15 to 20 minutes before she slipped and fell on the same stairway, and "[a] building attendant was present at the scene just prior to the accident." *Kelsey*, 383 N.Y.S.2d at 348. Similarly, in *Restey* the court found that there was sufficient evidence to support the jury's finding that the defendant was on constructive notice of a puddle of water in its store, where the evidence established that the water was not present on the floor in front of a store freezer when the plaintiff climbed on top of the freezer to arrange a display, but was present in that same area 10 to 15 minutes later when she climbed down, causing her to slip and fall. *Restey*, 512 N.Y.S.2d at 939–40. The court in *Restey* also credited the fact that it was a snowy day, that several customers had passed through that aisle while the plaintiff was arranging the display, that the water the plaintiff slipped in was "cold and dirty," and there were noticeable footprints in the water. (*Id.*) In addition, the *Restey* court considered a store manager's testimony that he "made regular rounds of the dairy aisle between 10 and 20 times every hour and that he was never away from the dairy aisle more than 10 minutes at a time." (*Id.*) The court concluded that the

defendant "had constructive notice of a dangerous condition that allegedly caused plaintiff's injuries, as well as an adequate time to remedy the condition." (*Id*. at 940.)

In contrast to these cases, here there is no evidence establishing a time frame for how long the lid could have been on the floor, other than the presence of a wet paper towel and the observation that the floor was "clean and dry" subsequent to her fall. Plaintiff herself does not offer a time frame regarding how long it would have taken for a food spill that had been cleaned with a paper towel to dry completely, but merely notes that "[w]e can certainly exclude the possibility that the item was on the floor merely moments before the accident took place." (Pl. Opp'n Mem. 12.) However, excluding this possibility is insufficient to meet Plaintiff's burden to establish a *prima facie* case that the alleged spill had been on the floor long enough to demonstrate that Defendant had constructive notice. *See Stephanides v. BJ's Wholesale Club, Inc.*, No. 12-CV-0083, 2013 WL 1694901, at *5 (E.D.N.Y. Apr. 18, 2013) ("[I]n cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant." (collecting cases)); *Casierra v. Target Corp.*, No. 09-CV-1301, 2010 WL 2793778, at *3 (E.D.N.Y. July 12, 2010) (finding defendants were not on constructive notice where there was no evidence as to how long a lotion spill had been on the floor, noting that "[f]or all we know, the lotion may have been on the floor for a long time, or it may have spilled moments before [the plaintiff] slipped on it"); *Gonzalez v. Jenel Mgmt. Corp.*, 784 N.Y.S.2d 135, 136 (App. Div. 2004) (affirming summary judgment for defendants where "the plaintiffs failed to provide evidence as to how long the puddle had been on the step, thereby making it pure speculation that the defendants had sufficient time to remedy the situation"); *cf. Rose v. Da Ecib USA*, 686 N.Y.S.2d 19, 21 (1999) (reversing summary judgment where the evidence showed that the only person in the vicinity of

13

a slippery substance on the ground in a restaurant for 15 minutes prior to plaintiff's falling on the substance was a waiter, and that a reasonable jury could have found that "either the waiter spilled the slippery substance during that 15–minute period while he was cleaning up, or it had been created earlier, in which case defendant's employees had sufficient time to discover and remove it but negligently failed to do so"); *Giambrone v. New York Yankees by Steinbrenner*, 581 N.Y.S.2d 756, 758 (App. Div. 1992) (affirming denial of summary judgment where the plaintiff presented evidence that she "observed litter on the walkway [at a baseball stadium] in the vicinity of a refreshment stand during the seventh inning and that the condition of the area remained unchanged at the time she fell which . . . was 'several innings' later").

Plaintiff's argument that she fell in an area that was "regularly traversed" by Defendant's employees and in the vicinity of the Guest Services offices is insufficient to defeat summary judgment, absent some evidence that the lid was on the floor long enough that an employee should have walked through the area and observed it. *See Strowman v. Great Atl. & Pac. Tea Co., Inc.*, 675 N.Y.S.2d 82, 83 (App. Div. 1998) (finding that "the fact that defendant's employees may have been in the vicinity of the accident" was not "sufficient to establish constructive notice"). By her own testimony, Plaintiff did not see any Target employees in the vicinity of where she slipped and fell when she got off the escalator, and there is no other evidence in the record establishing the presence of any employee in the area prior to Plaintiff's fall.

In sum, there is insufficient evidence in the record from which a reasonable jury could infer that Defendant had constructive notice of the food container lid on the floor prior to Plaintiff's fall.

14

## III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment. The Clerk of Court is directed to close this case.

SO ORDERED:

  s/MKB  
MARGO K. BRODIE  
United States District Judge

Dated: September 12, 2014  
　　　　Brooklyn, New York